IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| INTEGRATED DISTRIBUTION SERVICES INC., § § § *Plaintiff*, § § v. § § H.E.B. INC. and CHAMELEON BEVERAGE COMPANY INC., § § § § *Defendants*. § | Civil Action No.  SA-12-CV-271-XR |

### ORDER

On this day the Court considered Defendant Chameleon Beverage Company Inc.'s motion to dismiss for lack of personal jurisdiction and alternative motion to transfer venue (Doc. No. 6). After careful consideration, the Court DENIES the motions.

### I. Background

**A. Factual Background**

This case arises out of a dispute over unpaid shipping charges.

Defendant Chameleon Beverage Company Inc. ("Chameleon") is a bottling company located in Commerce, Los Angeles County, California. (Decl. of Derek Reineman ¶ 4).[1] One of Chameleon's former bottling customers was AM Consolidated LLC ("AMC"), a company that sold beverages such as fruit juice and water to wholesalers. (Mot. Dismiss 2).

Chameleon and AMC operated under an agreement whereby Chameleon would bottle AMC's beverages and store them at Chameleon's warehouse until AMC made arrangements

---

[1] Derek Reineman is the president of Chameleon. His declaration is attached as Exhibit A to Chameleon's motion to dismiss (Doc. No. 6).

for the products to be picked up by a delivery company. (Decl. of Derek Reineman ¶ 5). Chameleon did not initiate any contact with the delivery companies and was never involved in making any of the arrangements regarding pick-up. (*Id.* ¶ 8). Rather, all delivery arrangements and transportation costs were the sole responsibility of AMC. (*Id.*).

Upon a delivery driver's arrival at Chameleon's warehouse, it was routine practice for Chameleon employees to complete an "Outbound Vehicle Inspection Report," a form that Chameleon would then provide to AMC to verify that the delivery vehicle was clean and had been loaded properly, and to provide the delivery driver with a bill of lading. (*Id.* ¶ 11). The bill of lading specified the address where the product had been picked up (i.e., the address of Chameleon's warehouse), the location where the product was to be delivered, and the entity responsible for delivery charges. (*Id.*).

Shipments of beverage products to Defendant H.E.B. Inc. ("HEB"), a supermarket chain headquartered in San Antonio, Texas, were processed in this manner. (*Id.* ¶ 13). Because the goods were loaded onto the delivery truck from Chameleon's warehouse, the bills of lading for shipments to HEB listed Chameleon as the shipper. (*Id.*; *see also* HEB's Resp., Ex. B). However, AMC was the party responsible for freight charges incurred and was also the recorded vendor of the products delivered to HEB. (HEB's Resp. ¶ 4).

AMC filed bankruptcy in 2011 and allegedly left shipping charges unpaid. (Decl. of Derek Reineman ¶ 6; Compl. ¶ 11).

Plaintiff Integrated Distribution Services Inc. ("IDS"), an interstate property broker engaged in the performance of interstate transportation,[2] seeks to recover unpaid shipping charges that were incurred transporting products from Chameleon's warehouse to HEB in Texas. (Compl. ¶ 9 & Ex. A). IDS alleges that it paid the underlying carrier's freight charges

---

[2] IDS was formed under the laws of Indiana and maintains its principal place of business in Indiana. (Compl. ¶ 1).

and thus received an assignment of the carrier's freight claims against HEB and Chameleon. (*Id.* ¶ 12). IDS alleges that, by failing to pay IDS or the underlying carrier the sums due as transportation charges, HEB and Chameleon have breached their obligations established by the bills of lading and invoices. (*Id.* ¶ 19). Consequently, IDS brings this lawsuit against Chameleon and HEB under 49 U.S.C. §§ 13706 and 13702(A), alleging that, as an assignee of the underlying carrier's freight charge claims, it is entitled to collect the $102,802.29 in unpaid transportation charges, together with interest, attorneys' fees, and costs of collection. (*Id.* ¶ 18).

### B. Procedural Background

IDS filed its lawsuit in this Court against HEB and Chameleon on March 23, 2012, alleging diversity jurisdiction. HEB filed an answer denying liability. In its answer, HEB also filed a cross-claim against Chameleon contending that, in the event and to the extent that HEB is determined to be liable to IDS, HEB should be entitled to a judgment against Chameleon. (HEB's Answer ¶ 34). Chameleon filed this motion to dismiss for lack of personal jurisdiction on May 29, 2012, contending that neither IDS nor HEB have alleged sufficient facts to establish either specific or general personal jurisdiction over Chameleon and that litigating the action in Texas would offend traditional notions of fair play and substantial justice. Alternatively, Chameleon has moved to transfer venue, contending that both public and private factors weigh in favor of transferring the case to the Central District of California. Both HEB and IDS oppose Chameleon's motions, arguing that personal jurisdiction over Chameleon is established and that a transfer would be inappropriate because the inconvenience that HEB would suffer from litigating the case in California is not significantly different from the inconvenience that Chameleon faces by litigating the case here in Texas.

The Court will first consider Chameleon's motion to dismiss for lack of personal jurisdiction.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Personal Jurisdiction: Legal Standard

Federal Rule of Civil Procedure 12(b)(2) requires that, upon motion, a court must dismiss a claim against a defendant if the court lacks personal jurisdiction. "[T]he party seeking to invoke the power of the court . . . 'bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence.'" *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012); *see also Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) ("When the district court rules on [a motion to dismiss for lack of personal jurisdiction] without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.").

"A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Because Texas's long-arm statute reaches the constitutional limit, this Court must decide whether exercising personal jurisdiction over Chameleon offends federal due process. *See id.*

"The exercise of personal jurisdiction comports with due process where: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state; and (2) the exercise of personal jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Choice Healthcare,*

*Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 367 (5th Cir. 2010) (quoting *Mink v. AAAA Dev. L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999)).

Personal jurisdiction can be established through either specific or general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011). Because the Court finds that it has specific personal jurisdiction over Chameleon in this case, the Court need not consider whether general jurisdiction applies.

**1. Specific Jurisdiction**

The Fifth Circuit's test for specific personal jurisdiction considers:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 375 (5th Cir. 2012) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). This Court will evaluate each factor in turn.

**a. Minimum Contacts**

For minimum contacts to be established, "[I]t is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). "The minimum contacts inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court." *Vanderbilt Mortg. & Fin.*, 692 F.3d at 375 (quoting *McFadin*, 587 F.3d at 759). "The defendant must not

be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id.*

The Fifth Circuit has adopted the stream of commerce theory of personal jurisdiction whereby the purposeful availment requirement is met if the defendant had "knowledge that the product, once introduced into the market, would likely enter the forum state." *Choice Healthcare*, 615 F.3d at 373 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 116-17, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (Brennan, J., concurring)). The stream of commerce theory has been applied in cases that "concern products introduced into the stream of commerce by non-resident defendants who benefit from the product's final sale in the forum." *Id.* at 374 n.9. "Deriving revenue from such commercial activity is the quid pro quo for requiring the defendant to suffer a suit in the foreign forum." *Id.* at 373.

Here, there is no question that Chameleon knew that its products—i.e., the containers that it manufactured—were being shipped to HEB in Texas. Chameleon loaded the products bound for Texas onto the delivery truck and prepared bills of lading that specifically identified HEB Grocery Retail Support Center in Texas as the consignee.[3] While Chameleon might not have contracted with HEB or made any of the shipping arrangements, Chameleon nonetheless intentionally transferred its products to HEB stores in Texas.[4] Moreover, the shipments were not random or sporadic. Rather, IDS has produced an invoice report showing that from April 2011 through December 2011, numerous shipments were delivered to the Houston Grocery Retail Store.[5]

---

[3] *See* Bills of Lading, attached as Ex. B to HEB's Response.
[4] While Chameleon seems to argue that only AMC's products were shipped to Texas, see pages four through five of Chameleon's motion to dismiss, that argument neglects the fact that Chameleon's containers were delivered to Texas as well.
[5] *See* Accounts Receivable Aged Invoice Report, attached as Ex. A to IDS's Complaint.

Chameleon also benefitted from its contact with Texas in at least two different ways. For one, Chameleon benefitted from the privileges and protections of Texas law because Chameleon's containers were sold to HEB, which in turn would sell products to consumers in supermarkets throughout the state of Texas. Additionally, Chameleon gained an indirect financial benefit from sales in Texas because, when AMC sold its products to HEB in Texas, Chameleon received more packaging orders as a result. As stated in the Master Contract Packing Agreement, AMC issued purchase orders for Chameleon's containers based on production plans. AMC generated these production plans based on 90-day forecasts, and the forecasts were based on numbers provided to AMC by its customers.[6] Thus, if AMC's sales forecasts increased because of its sales in Texas, Chameleon received the financial benefit of receiving additional manufacturing orders. Nothing in the record controverts the language of the Master Contract Packing Agreement to suggest that Chameleon did not receive additional orders in this way.

Because Chameleon intentionally sent its products to Texas stores and benefitted from the shipments, Chameleon has established minimum contacts with Texas for purposes of this lawsuit.

### b. Whether the Cause of Action Arises Out of the Forum-Related Contacts

IDS seeks to recover allegedly unpaid charges it incurred as a result of transporting Chameleon's containers to Texas. Chameleon knew that its products were being transported to Texas and Chameleon also benefitted from the shipments. Thus, IDS's cause of action sufficiently arises out of Chameleon's contacts with Texas.

---

[6] *See* Master Contract Packing Agreement ¶ 6, attached as Exhibit A to HEB's Response.

### c. Whether the Exercise of Personal Jurisdiction is Fair and Reasonable

"When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 382 (5th Cir. 2002)). In conducting the fairness inquiry, a court examines "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* (citing *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir.1996)).

The defendant must "present a compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477. Jurisdiction is unreasonable if it is "employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478.

It is true that Chameleon will face a greater burden by litigating this dispute in Texas rather than in California. However, litigation in Texas will not be "so gravely difficult and inconvenient" that Chameleon will be put at a severe disadvantage in the proceedings, especially in light of the fact that Plaintiff IDS, an Indiana corporation with its principal place of business in Indiana, is litigating the dispute outside of its home state as well. Retaining personal jurisdiction over Chameleon in this case also fosters the efficient administration of justice by preserving judicial resources. If the Court were to dismiss Chameleon for lack of personal jurisdiction, the Court would be compelling parallel lawsuits and additional legal proceedings. Maintaining jurisdiction, on the other hand, promotes judicial economy by

resolving the dispute in a single forum. Finally, the Court notes that Texas has an interest in mediating the dispute because the goods underlying the dispute were delivered both to a location in Texas and to a Texas corporation. It is not unreasonable to require Chameleon to litigate a dispute in a state where it purposely sent its products over the course of several months.

Thus, upon consideration of the relevant factors, the Court finds that Chameleon has failed to make a "compelling case" demonstrating that the Court's exercise of personal jurisdiction over it would be unreasonable.

### III. Motion to Transfer Venue

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc).

In determining whether a transfer is appropriate under § 1404(a), a district court should consider the following private and public interest factors:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (alteration in original) (internal quotation marks and citations omitted). A party seeking to transfer venue bears the burden of showing "good cause." *Id.* Good cause is established if the movant demonstrates that the transferee venue is "clearly more convenient" in light of the requirements enumerated in § 1404(a). *Id.* However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

Unquestionably, this lawsuit would be more convenient for Chameleon if it were tried in California. However, Chameleon is not the only party that must be considered. The plain language of § 1404(a) refers to the convenience of the "parties." Thus, the Court must consider the impact of a venue transfer on all parties involved.

If this dispute were litigated in California, HEB would be inconvenienced in largely in the same way that Chameleon faces inconvenience by a lawsuit in Texas. HEB's headquarters are in San Antonio, and the shipments at issue in this lawsuit were delivered to HEB's locations in Texas. Thus, if the case were transferred to the Central District of California, HEB would have to bear the burden and expense of transporting its employees, records and witnesses across the country to litigate the dispute.

Not only would HEB be inconvenienced by a transfer to California, but IDS would be inconvenienced as well. IDS maintains its principal place of business in Indiana, which is several hundred miles farther away from California than Texas. Pushing the forum hundreds of additional miles farther away from IDS would clearly impose further inconvenience upon IDS. *See id.* at 317 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to

witnesses increases in direct relationship to the additional distance to be traveled.") (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004)).

Chameleon nonetheless argues that the "vast majority" of witnesses are located in California. However, nothing at this point in the proceedings suggests that Chameleon will need to call significantly more witnesses than HEB, much less more witnesses than HEB and IDS combined. Chameleon also argues that California, not Texas, has a distinct interest in litigating the case because the critical delivery terms were negotiated in California, the transaction originated in California, and the product was placed in IDS's custody in California. However, Chameleon's argument is unpersuasive because the bills of lading, which serve as the basis of this lawsuit, were *performed* in both California and Texas. Although contractual terms might have been negotiated in California, the goods were transported to a Texas corporation at a location in Texas. Thus, Texas has an interest in litigating the dispute. Moreover, even if it could be found that California has a marginally greater interest than Texas in litigating the dispute, the interest would nonetheless be outweighed by the significant additional inconvenience that a transfer would impose upon both HEB and IDS.

Finally, the Court recognizes that IDS has an interest in litigating the case in its chosen forum. IDS has chosen to bring suit in Texas, which is a reasonable decision in light of the facts that Defendant HEB is headquartered in Texas and that this suit arises out of the transportation of goods to Texas. There is no indication that IDS has chosen this venue based on an improper motive. Thus, because IDS has not abused its privilege, IDS's choice of venue should be respected.

Consequently, upon consideration of the relevant factors, the Court finds that it is not appropriate to transfer this case to the Central District of California.

## IV. Conclusion

Because Chameleon intentionally sent its containers to Texas and received a benefit from the shipments, the Court finds that it may properly exercise specific personal jurisdiction over Chameleon in this case.

Furthermore, because litigating this case in the Central District of California would not clearly be more convenient for all parties, the Court finds that there is not good cause to transfer venue.

Accordingly, Chameleon's motion to dismiss and alternative motion to transfer venue (Doc. No. 6) are DENIED.

It is so ORDERED.

SIGNED this 29th day of October, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE